IN THE DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PATS Aircraft, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. 15-1182-RGA |
| v. | : | |
| | : | |
| Vedder Munich GmbH, | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM OPINION

Daniel Bartley Rath, Esq., and James S. Green, Jr., Esq., Wilmington, Delaware; Polina Polansky, Esq., and Stephen A. Silverman, Esq., Los Angeles, California, Attorneys for the Plaintiff.

Andrew Dieter Cordo, Esq., and Frederick Troupe Mickler, IV, Esq., Wilmington, Delaware, Attorneys for the Defendant.

July 14, 2016

*Richard G. Andrews*

**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendant's Motion to Dismiss or, in the alternative, to stay

proceedings based on Fed. R. Civ. P. 12(b)(2), 12(b)(5), international comity and forum non

conveniens. (D.I. 3). The motion has been fully briefed. (D.I. 4, 7, 11). Defendant's motion

will be denied in part and stayed in part.

## I.   BACKGROUND

### A.   The Parties

Plaintiff PATS Aircraft LLC is a Delaware limited liability company headquartered in

Georgetown, Delaware. (D.I. 9 at ¶ 3). PATS specializes in providing aircraft maintenance,

modification, and luxury interior completion services to customers. (*Id.* at ¶4). To provide these

services to clients, PATS designs the interior and then oversees the manufacture and integration

of components into the aircraft. (*Id.*).

Defendant Vedder Munich GmbH is a German corporation with its principal office in

Wallersdorf, Germany. (D.I. 4, Ex. 1, ¶ 3). Vedder Munich is an affiliate of Vedder GmbH and

was formed in 2013 for the purpose of acquiring most of the assets of the insolvent German

company, Loher Raumexklusiv GmbH. (*Id.*). Prior to filing for insolvency, "Loher's business

included providing interior outfitting for personal residences, yachts and private aircraft." (*Id.*).

Vedder Munich has no employees, offices, business facilities or telephone numbers in the

United States. (*Id.* at ¶ 4). It does not maintain any bank accounts or own or lease any real estate

in the United States. (*Id.*). Vedder Munich does not advertise in Delaware and it does not

operate a website. (*Id.* at ¶ 7).

### B.   The Transaction

2

In November 2011, PATS entered into an Aircraft Modification Agreement with White Springs Holdings Ltd., for the modification of a Boeing Business Jet 737 aircraft. (D.I. 9 at ¶ 5). The aircraft is registered with the FAA and must comply with all FAA rules and regulations, including those relating to flammability. (*Id.* at ¶6).   White Springs requested that PATS hire Loher to complete the interior cabinetry work for the aircraft. (*Id.* at ¶ 7).  However, Loher filed for insolvency before it was able to perform the cabinetry manufacture under the Aircraft Modification Agreement. (*Id.* at ¶ 7).  Prior to the purchase of Loher's assets, Loher's insolvency administrator informed Vedder Munich that the owner of the aircraft wanted to discuss the possibility of Vedder Munich taking on the PATS project. (D.I. 4, Ex 1, ¶ 13).

On May 29, 2013, representatives of PATS and Vedder Munich held a preliminary meeting at the Munich Airport in Germany in order to discuss the possibility of Vedder taking on the PATS project. (*Id.* at ¶ 14; D.I. 9 at ¶ 9).  The parties agreed that, if Vedder Munich completed its acquisition of Loher, it would complete a review of the project and submit estimates as to costs and timing for completion. (D.I. 4, Ex. 1, ¶ 15).  On June 1, Nicholas Held, managing director of Vedder Munich, informed PATS that the company had completed its acquisition of Loher and was willing to pursue the manufacturing project. (*Id.* at ¶ 17).

The parties held another meeting on June 12-13, 2013. (*Id.* at ¶¶ 15, 18; D.I. 9 at ¶ 10). At PATS' invitation, Director Held travelled to Georgetown, Delaware to discuss terms and to view PATS' facilities. (D.I. 4, Ex. 1, ¶¶ 16, 18).  At the time, PATS states that it was entertaining other bids to complete the project and that this Delaware meeting with Vedder Munich formed the basis of PATS' decision ultimately to hire Vedder Munich. (D.I. 9 at ¶ 10). The parties continued to discuss the terms of the contract through email and phone following the Delaware meeting. (D.I. 4, Ex. 1, ¶ 20; D.I. 9 at ¶ 12).  When an agreement was reached, each

party executed the subcontract in its respective country on July 25, 2013. (D.I. 4, Ex. 1, ¶ 21; D.I. 9 at ¶ 13).

During the manufacturing process, members of PATS' staff flew to Germany to review the manufacturing process. (D.I. 4, Ex. 1, ¶ 22). Title to the completed cabinets was passed in Germany and the cabinets were then shipped to Philadelphia, Pennsylvania. (*Id.* at ¶ 23). As the project progressed, Vedder Munich began to fall behind the agreed upon delivery schedule. (D.I. 9 at ¶¶ 13, 15). As a result, Vedder Munich agreed to perform some work in Delaware. (*Id.* at ¶¶ 15-16). PATS also notes that Vedder Munich began shipping unfinished cabinetry to Delaware for completion at the PATS Georgetown facility in order to compensate for lost time. (*Id.* at ¶15). Between December 2013 and March 2015, PATS asserts that Vedder Munich made fifty shipments to Delaware of product in various stages of completion. (*Id.*). Vedder also sent personnel to oversee the necessary work, as well as additional parts and materials. (*Id.* at ¶¶ 16-17). The parties agree that Vedder Munich employees remained in Delaware for extended periods of time to assist on the project. (D.I. 4, Ex. 1, ¶ 25; D.I. 9 at ¶¶ 16-18). Director Held also made a second visit to Delaware to assess progress on the project in December 2014. (D.I. 9 at ¶ 20).

Under the July 25th subcontract, Vedder Munich was obligated to provide "burn test coupons" for testing to ensure compliance with the FAA's flammability requirements. (*Id.* at ¶ 21). These burn test coupons were essentially representative samples of the cabinetry that Vedder Munich was manufacturing for PATS. (*Id.*). Vedder delivered the official set of burn test coupons to PATS in early 2015. (*Id.* at ¶ 23). The coupons failed the FAA-mandated flammability tests, rendering the aircraft unairworthy. (*Id.*). Following the failure, Director Held made a third visit to Delaware on June 16, 2015 in an attempt to negotiate issues relating to the

4

failure. (*Id.* at ¶24). The parties were ultimately unable to reach a resolution regarding who should bear the costs associated with correcting the flammability problem, and continue to disagree over who bears the burden of ensuring FAA compliance under the subcontract. (*Id.* at ¶¶ 25-26).

## II.   **PROCEDURAL HISTORY**

### A.   German Declaratory Action

On September 28, 2015, Vedder Munich filed a declaratory judgment action against PATS in the Regional Court Landshut, Commercial Cases Division in Landshut, Germany. (D.I. 11, Ex. A at ¶ 4). Specifically, Vedder Munich is asking the Regional Court for a determination of the parties' obligations under the contract. (D.I. 4, Ex. 1 at 30-32). Service of that lawsuit was effectuated on PATS in Delaware on December 18, 2015. (D.I. 11, Ex. A at ¶ 4). PATS subsequently filed notice with the Regional Court of its intent to defend the lawsuit and the Regional Court set a deadline for PATS' reply. (*Id.* at ¶ 5).

### B.   Delaware Action

PATS filed this action on November 6, 2015, in Delaware Superior Court, seeking affirmative relief for breach of contract and warranty. (D.I. 9 ¶ 26; D.I. 1, Ex. A, 2-15). The case was subsequently removed to this court. (D.I. 1). PATS sent notice of this action to Vedder Munich by registered mail and also served a copy of the complaint upon the Delaware Secretary of State. (D.I. 7, Ex. A). Notice by mail was received by Vedder Munich in Germany on November 30, 2015. (D.I. 4, Ex. 1, ¶ 33). PATS then served Vedder Munich through the German Central authority, purportedly in compliance with the Hague Convention, on February 22, 2016. (D.I. 16-1).

III.   **DISCUSSION**

    A.    12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu,* 495 F. Supp.2d 444, 448 (D.Del. 2007). Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, with reasonable particularity, that such minimum contacts have occurred between the defendant and the forum sufficient to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n.9 (3d Cir. 1984).

The personal jurisdiction analysis involves both a statutory and constitutional inquiry. *Shoemaker v. McConnell,* 556 F.Supp.2d 351, 354 (D.Del. 2008). First, the court must consider whether a defendant's actions come within any of the provisions of the state long-arm statute. *See Intel v. Broadcom,* 167 F.Supp.2d 692, 700 (D.Del. 2001). Second, the Court must determine whether exercising jurisdiction over the defendant in the forum comports with the Due Process Clause of the Constitution. *Id.* Due process is satisfied if the court finds the existence of "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

        1.    This Court may exercise specific personal jurisdiction over Vedder Munich under the Delaware long-arm statute.

With regard to the first part of the personal jurisdiction analysis, the court applies the law of the state in which the district court is located. *See Intel,* 167 F.Supp.2d at 700. Pursuant to the relevant portions of the Delaware long-arm statute, this court may exercise personal jurisdiction over Vedder Munich when the company or its agent:

> (1) Transacts any business or performs any character of work or service in the State; (2) Contracts to supply services or things in this State;

10 Del. C. § 3104(c)(1)-(2).

The court should interpret the language of these provisions liberally, as "conferring jurisdiction to the maximum extent of the Due Process clause." *Jeffreys v. Exten,* 784 F.Supp. 146, 151 (D.Del. 1992). Further, the Delaware long-arm stature is a "single act" statute, whereby even one transaction engaged in by the nonresident in Delaware establishes jurisdiction. *Eudaily v. Harmon,* 420 A.2d 1175, 1180 (Del. 1980). PATS contends that specific jurisdiction over Vedder Munich is authorized by either §§ 3104(c)(1) or (2) because Vedder Munich "transact[ed] business or perform[ed] any character of work" in Delaware and "[c]ontract[ed] to supply services or things" in Delaware. I agree.

First, in order to meet the requirements of transacting business under § 3104(c)(1), "an act must be directed at residents of the state of Delaware and the protection of its laws." *Thorn EMI North America, Inc. v. Micron Technology, Inc.,* 821 F.Supp. 272, 274 (D.Del. 1993). There must exist a nexus between plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1155 (Del.Super. 1997), *aff'd,* 707 A.2d 765 (Del. 1998). Vedder Munich claims that no such nexus exists between PATS' cause of action and Vedder Munich's conduct in Delaware because all flammability-related aspects of manufacture took place in Germany. The complaint, however, shows that PATS raises numerous issues with the cabinetry, not just flammability. PATS cites

7

delays in manufacture, defective cabinet components, and poor visible appearance due to finish shrinkage in support of its breach contract and warranty claims. (D.I. 1, Ex. A, 6). Vedder Munich sent employees and materials to Delaware to correct some of these very issues. (D.I. 4, Ex. A, ¶ 25). Furthermore, the underlying contract was one for the general manufacture of cabinetry. Vedder Munich's effort to separate the work performed in Delaware from the work performed in Germany is legally meaningless. This court has previously found that causes of action or claims of relief should be broadly construed to cover an entire transaction. *See Moore v. Little Giant Industries, Inc.* 513 F.Supp. 1043, 1047-48 (D.Del. 1981).

Delaware case law holds that telephone calls or shipping goods into the state alone are not sufficient to constitute transaction of business in Delaware. *See Fisher v. Hilton,* 549 F.Supp. 389, 391 (D.Del. 1982) (finding that phone calls absent any action by nonresident within Delaware does not constitute transacting business); *Moore,* 513 F.Supp. at 1047 (merely shipping goods into Delaware, without more, is not transaction of business). However, Vedder Munich's conduct in sending staff and materials to Delaware to perform the agreement, combined with the voluminous and systematic correspondence and its shipment of goods directly to Delaware, is sufficient to demonstrate that it transacted business and performed any character of work in the state. *See Mumford v. Carey's Diesel, Inc.,* 1995 WL 108885, at *3 (Del. Super. Feb. 6, 1995) (business did not "transact business" when entirety of performance was completed outside of Delaware); *Chase Bank USA N.A. v. Hess Kennedy Chartered LLC,* 589 F.Supp.2d 490, 500 (D.Del. 2008) (finding that non-resident defendants transacted business in Delaware when they mailed over 3,000 pieces of correspondence to plaintiff and performed services in Delaware).

The specific jurisdiction analysis under § 3104(c)(2) reaches the same result. Vedder Munich argues that the contract was intended to be performed in Germany, title was to pass in Germany, and PATS was responsible for shipment. Therefore, Vedder Munich did not contract to provide services in Delaware. However, this Court has previously found § 3104(c)(2) applicable under similar facts. *See Mendelson v. Delaware River & Bay Auth.,* 56 F.Supp.2d 436, 438-39 (D.Del. 1999)(finding specific jurisdiction where company manufacturing product for a Delaware ferry did not ship directly to Delaware and did not negotiate or perform contract in Delaware); *Moore,* 513 F.Supp. at 1047-48 (specific jurisdiction under § 3104(c)(2) where performance was completed in Utah, shipment was through a common carrier, and title passed in Utah). Further, some of the negotiations relating to the contract took place in Delaware and the agreement was partially performed here. *See Id.* Therefore, specific jurisdiction also exists pursuant to §3104(c)(2).

        2.       The exercise of jurisdiction over Vedder Munich comports with due process.

For the second step – the constitutional inquiry – the Court applies federal law. *Shoemaker v. McConnell,* 556 F.Supp.2d. 351, 354 (D.Del. 2008). Since jurisdiction over Vedder Munich exists under the long arm statute, the court must now determine whether the exercise of personal jurisdiction comports with due process. *Id.* The Supreme Court has stated that due process requires that a defendant have certain minimum contacts with the forum in order to ensure that "the maintenance of the [law]suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). In other words, the plaintiff must demonstrate that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," such that it should "reasonably

anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Personal jurisdiction over a nonresident defendant is proper when either specific or general jurisdiction exists. Specific jurisdiction "exists when the defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or related to" those activities.'" *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,* 229 F.3d 254, 259 (3d Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).

Vedder Munich's primary assertion against the exercise of jurisdiction is that it did not initiate the relationship with PATS and thus did not purposefully direct activities at residents of Delaware. While it is true that Vedder Munich did not solicit PATS for this project, the course of dealing demonstrates that Vedder Munich certainly directed acts toward Delaware residents and availed itself of Delaware law. *See BP Chems. Ltd.,* 229 F.3d at 260 (a court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in establishing minimum contacts.) Vedder Munich sent Director Held to Delaware to negotiate the transaction, and on two other occasions in connection with performance. Vedder Munich performed part of the agreement in Delaware. It sent materials, tools and employees to Delaware, with several of these employees remaining in the state for extended periods of time. As a result, I find that exercising jurisdiction over Vedder Munich comports with due process because Vedder Munich purposefully availed itself of the privilege of conducting business in Delaware.

B.     12(b)(5) Motion to Dismiss for Improper Service of Process

A defendant may file a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(5) when a plaintiff fails to properly serve the defendant with the summons and complaint. Fed.R.Civ.P.

Rule 4(h), by reference to Rule 4(f), requires that service upon a foreign corporation shall be effectuated by "internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed.R.Civ.P. 4(f). The Hague Convention applies where civil litigants have cause to transmit judicial or extrajudicial documents internationally. *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 699 (1988). In all cases where the Hague Convention applies, the supremacy clause of the constitution preempts all inconsistent forms of service. *Id.* Where a state's long-arm statute allows service by means other than delivery of paper abroad, service must be effectuated by the law of the forum state. *See id.* Section 3104(d) of the Delaware long-arm statute permits service upon a nonresident by mail, but also "in the manner provided or prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction." 10 Del. C. § 3104(d)(3). As service upon foreign non-resident defendants necessarily requires the delivery of judicial papers internationally, "service of process to a foreign corporation ought to comply with the Hague Convention." *E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.,* 197 F.R.D. 112, 123 (D.Del. 2000), *aff'd in part and app. dism. in part,* 269 F.3d 187 (3d Cir. 2001).

Germany however, has specifically objected to service by mail under the Hague Convention. *Pittsburgh Nat. Bank v. Kassir,* 153 F.R.D. 580, 582 n.1 (W.D. Pa. 1994). As such, service of process upon a non-resident defendant in Germany must comply with the other relevant service provisions of the Hague Convention. Based on the language of the Hague Convention, it appears that there are multiple ways that service might properly be effected.

PATS argues that Vedder Munich was "served by delivery to an addressee who accepts it voluntarily." Hague Convention, Art. 5. I do not understand the factual basis for this argument.

Plaintiff asked for service "by delivery to the addressee, if he accepts it voluntarily (second paragraph of Article 5)." (D.I. 16-1 at 3). The record from the Landau Court of the service does not have checked the corresponding box which says, "by delivery to the addressee, if he accepts it voluntarily." (D.I. 16-1 at 4). Instead, it has checked that the service was "in accordance with the provisions of sub-paragraph a) of the first paragraph of Article 5 of the Convention." (*Id.*). Sub-paragraph a) is modified by the statement that "the Central Authority may require the document to be written in, or translated into, the official language . . . of the State addressed." It seems to be conceded by PATS, however, that it has not had anything translated into German. Instead, it argues, in so many words, that the German translation requirement is superfluous because Vedder Munich's principal, Mr. Held, is "fluent in . . . English." Mr. Held may be fluent in English, but that is, I think, irrelevant to the need to effect service in compliance with the Hague Convention.

Thus, for lack of papers in German, I think service to date has been ineffective. I do think the Central Authority arranged for the service that the Landau Court executed. Vedder Munich says it did not. (D.I. 18 at 1). PATS says the Landau Court's actions satisfied the Central Authority requirement, citing the English translation of a German court document. (D.I. 19 at 2). Further, Vedder Munich says the Central Authority is the "president of the Higher Regional Court of Munich." (D.I. 18, Convenience Translation, p.3). The request for service abroad is directed to the "Präsidentin des Oberlandesgerichts München" (D.I. 16-1 at 3), which appears to me likely to be exactly the "president of the Higher Regional Court of Munich." Thus, while I do not think I need to dismiss the case for lack of service, I also do not think the case should proceed until there has been effective service. Thus, I stay any action on

12

Defendant's Motion to Dismiss pursuant to 12(b)(5) until Plaintiff shows proof of effective service.[1]

C.      Motion to Dismiss or Stay for International Comity

International comity has been defined as the "recognition which one nation allows within its own territory to the legislative, executive, or judicial acts of another nation." *Hilton v. Guyot,* 159 U.S. 113, 163 (1895). It is not a rule of law, but one of "practice, convenience and expediency." *Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.,* 466 F.3d 88, 92 (2d Cir. 2006). "[I]t is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 440 (3d Cir. 1971). On the other hand, federal district courts have a "virtually unflagging obligation…to exercise the jurisdiction given them." *IFC Interconsult, AG v. Safeguard Intern. Partners, LLC,* 438 F.3d 298, 305 (3d Cir. 2006) (quoting *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)). Federal district courts may abstain from hearing cases and controversies only under "exceptional circumstances." *See id.* at 305. Federal courts have "inherent power to dismiss or stay an action in favor of foreign litigation presenting the same claims and issues." *Evergreen Marine Corp. v. Welgrow Int'l Inc.,* 942 F.Supp. 201, 207 (S.D.N.Y. 1996).

Vedder Munich argues that this court should either dismiss or stay these proceedings on the basis of international comity in deference to the previously-filed German action. Ordinarily, a party invoking the doctrine of international comity seeks the recognition of a foreign judgment. *Royal & Sun Alliance Ins. Co. of Canada,* 466 F.3d at 92. Here, there is no judgment. In fact,

---

[1] As I understand it, there is litigation in Germany about whether service was proper. (D.I. 18). The parties should advise me if there is a decision relevant to this issue.

the record indicates that, other than filing the complaint and receiving a Notice to Defend, little

has occurred to date in the foreign action.

This court has previously held that federal courts are reluctant to decline to exercise

jurisdiction "solely on the basis of concurrent proceedings in a foreign jurisdiction." *Christ v.*

*Cormick,* 2007 WL 2022053, at \*7-8 (D.Del. July 10, 2007) (citing *Evergreen Marine Corp.,*

942 F.Supp. at 207). Generally, concurrent jurisdiction in United States courts and the courts of

a foreign sovereign does not result in conflict. *Royal & Sun,* 466 F.3d at 92. In fact, this court

has held that parallel proceedings on the same in personam claim should normally be allowed to

proceed simultaneously, at least until a judgment is reached. *Christ v. Cormick,* 2007 WL

2022053, at \*7*; see also Cliffs-Neddrill Turnkey International-Oranjestad v. M/T Rich Duke,*

734 F.Supp.142, 151 (D.Del. 1990) ("[w]hen related cases are before two different sovereigns

the appropriate procedure is to permit both jurisdictions to proceed, with any decision of one

becoming *res judicata* on the other"); *Royal & Sun,* 466 F.3d. at 95 ("the mere existence of an

adequate parallel action, by itself, does not justify the dismissal of a case on the ground of

international comity").

Parallel cases involve the same parties and "substantially identical" claims, raising

"nearly identical allegations and issues." *IFC Interconsult, AG*, 438 F.3d at 305 (quoting *Yang v.*

*Tsui,* 416 F.3d 199, 205 (3d Cir. 2005)). In addressing dismissal on the basis of international

comity, this court and others have emphasized the importance of the existence of foreign judicial

acts. *See Cliffs-Neddrill,* 734 F.Supp. at 151 ("This Court's application of the comity principle

similarly focuses on an *action* by a foreign government") (emphasis in original); *Sumitomo*

*Corp. v. Parakopi Compania Maritima, S.A.,* 477 F.Supp. 737, 742 (S.D.N.Y. 1979) (denial of

"comity defense" is appropriate where a foreign court has not yet reviewed the merits of the

dispute), *aff'd*, 620 F.2d 286 (2d Cir. 1980). The principle of comity is inapplicable at a stage of litigation where no action has been taken by the foreign court. *Cliff-Neddrill*, 734 F.Supp. at 151. Therefore, Vedder Munich's motion to dismiss this case on the basis of international comity is premature.

The decision to stay a proceeding based upon the existence of parallel litigation in a foreign forum is not based "on a mechanical checklist, but on a careful balancing of the important factors...as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Christ v. Cormick*, 2007 WL 2022053, at \*8. Courts have considered various factors, such as: "the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction." *Id.; see also Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d. 896, 898-99 (7th Cir. 1999).

This court recognizes that both Germany and the United States have strong connections to this litigation by virtue of the fact that performance of the agreement took place in both locations. The United States and Germany also both have interests in allowing domestic litigants to obtain relief. However, another important factor which weighs in this analysis is the difference in the scope of possible relief. Federal courts have denied comity stays where the relief requested differed between jurisdictions. *See I.J.A., Inc. v. Marine Holdings, Ltd., Inc.*, 524 F.Supp. 197, 199 (E.D.Pa. 1981) (stay denied where foreign litigation was in its incipiency and the range of requested relief differed in scope); *Christ v. Cormick*, 2007 WL 2022053, at \*8 (risk of inadequate relief warranted denial of stay). Vedder Munich filed a declaratory action in Germany, asking the court to determine the parties' obligations under the agreement. PATS in

turn is asking for relief in the form of damages and other costs. While the proceedings are parallel in the sense that they involve the same parties and the same underlying cause of action, the relief requested differs between the actions.

Given the incipiency of the German action, the difference in the requested relief, and the precedent that such proceedings are ordinarily allowed to proceed simultaneously, this court will allow PATS' action to proceed. I agree that international comity should be given to effectuate foreign judicial acts, but here the early stage of the foreign proceedings demonstrates that Vedder Munich's request for a stay based on comity is premature and is therefore denied.

D.    Motion to Dismiss for Forum Non Conveniens

The Supreme Court has directed that a plaintiff's choice of forum should rarely be disturbed. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *see also Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 46 (3d Cir. 1988) ("dismissal for forum non conveniens is the exception rather than the rule") (internal citation omitted). However, "[a] district court may, in the exercise of its sound discretion, dismiss a case 'when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would "establish ... oppressiveness and vexation to a defendant ... out of all proportion to the plaintiff's convenience."'" *Lony v. E.I. Du Pont de Nemours & Co.,* 886 F.2d 628 (3d Cir. 1992) (quoting *Piper Aircraft,* 454 U.S. at 241). The court's decision to grant or deny the motion to dismiss on the basis of forum non conveniens "should be an exercise in structured discretion founded on a procedural framework guiding the district court's decision making process." *Lacey,* 862 F.2d at 43.

The Third Circuit has previously set forth such a framework. *Id.* A district court entertaining a forum non conveniens motion must first determine the level of deference to be

16

afforded the Plaintiff's choice. *Id.* Next, the court must determine whether an adequate alternative

forum exists to hear the case. *Id.* Lastly, the court must then consider and balance several private

and public interest factors that are relevant to the forum non conveniens determination. *Id.* The

defendant bears the burden of persuasion as to all elements of the forum non conveniens

analysis. *Id.* at 44.

> 1.      PATS is afforded great deference in its choice of forum.

"Ordinarily, a strong presumption of convenience exists in favor of a domestic plaintiff's

chosen forum, and this presumption may be overcome only when the balance of public and

private factors clearly favors an alternate forum." *Windt v. Qwest Communications Int'l, Inc.,*

529 F.3d 183, 190 (3d Cir. 2008).  PATS' choice to bring this action in Delaware, its home

forum, carries a strong presumption of convenience and will be afforded great deference. Vedder

Munich may only overcome the presumption of convenience by demonstrating that the balance

of public and private interest factors clearly favor the German forum. *Windt,* 529 F.3d at 190.

> 2.      An adequate alternative forum exists in Germany.

A district court must consider the availability of an adequate forum before it weighs the

relevant private and public interest factors. The Supreme Court has held that "[o]rdinarily, this

requirement will be satisfied when the defendant is 'amenable to process' in the other

jurisdiction," except in the "rare circumstances…where the remedy offered by the other forum is

clearly unsatisfactory," such as when the "alternative forum does not permit litigation of the

subject matter of the dispute." *Piper Aircraft,* 454 U.S. at 255 n.22.

Here, Vedder Munich has presented persuasive arguments as to the adequacy of the

alternative forum.  (D.I. 4 at 23). As a German corporation, Vedder Munich is certainly

amenable to process in Germany. Further, there is nothing in the record to suggest that remedies available in Germany are clearly unsatisfactory so as to be one of *Piper*'s rare exceptions. Therefore, I agree with Vedder Munich that Germany presents an adequate alternative forum for this litigation.

       3.      Private interest factors do not warrant the dismissal or staying of proceedings

       Because an adequate alternative forum exists in Germany, Vedder Munich must demonstrate that the balance of private and public interest factors clearly favors the German forum. *Windt*, 529 F.3d at 190. These private interest factors include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate for the action; and all other practical problems that make trial of a case, easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947). To carry its burden, Vedder Munich must provide "enough information to enable the District Court to balance the parties' interests." *Lacey,* 862 F.2d at 44.

       Vedder Munich raises only two arguments in its effort to demonstrate that Germany is the appropriate forum. First, Vedder Munich relies on the fact that all of its witnesses, records and manufacturing facilities are located in Germany. Second, Vedder Munich notes that additional third-parties and witnesses may be necessary to resolve this dispute, and those parties are located in Europe. Vedder Munich cites various suppliers and subcontracts as examples of potential additional parties.

       Vedder Munich's argument that private interest factors weigh in favor of dismissal is unpersuasive. While it is true that Vedder Munich's witnesses, manufacturing facilities and

records are located in Germany, the same holds true for Delaware for PATS. When examining

the relative ease of access to sources of proof, and the availability of witnesses, the district court

must scrutinize the "substance of the dispute between the parties to evaluate what proof is

required, and determine whether the pieces of evidence cited by the parties are critical, or even

relevant" to the cause of action. *Lacey,* 862 F.2d at 46.  In this case, the underlying cause of

action stems from the parties' respective contractual obligations. As a contract dispute, the need

to collect substantial extrinsic evidence from third-party witnesses or to view manufacturing

facilities will likely be unnecessary. Further, the inconvenience that Vedder Munich will endure

as a result of having to produce records in Delaware is the same inconvenience that PATS will

suffer in Germany. As a result, the location of relevant records is neutral and insufficient to

demonstrate that Germany is the more convenient forum.

   Vedder Munich's reliance on potential additional parties is equally unpersuasive. Under

the Statement of Work agreed upon between the parties, Vedder Munich warrantied all work

completed by subcontractors and agreed that such work "will be done in a good, workmanlike

manner and be free from defects." (D.I. 1, Ex B at 61).  Vedder also warrantied that "the work

will not adversely affect the airworthiness of the aircraft and all work will be completed in

accordance with all applicable rules and regulations specified by the FAA." *Id.* This provision

articulates that Vedder Munich agreed to assume responsibility for the work performed by the

subcontractors and suppliers it used to manufacture the cabinetry. As such, Vedder Munich is the

primary party in this dispute with PATS. While it is true that other European entities may be

beyond the scope of this court's subpoena power, I fail to see how these entities are so necessary

to the resolution of this litigation that dismissal is warranted. Further, Vedder Munich offers no

evidence that non-German third-parties would be subject to the subpoena power of the Regional Court.[2]

      4.      Public interest factors do not warrant the dismissal or staying of procedings

This court must determine whether public factors also weigh in favor of dismissing this action. The Supreme Court has set forth a list of public interest considerations that a court must examine, which include: the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law and the unfairness of burdening citizens in an unrelated forum with jury duty. *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508-09.

Vedder Munich does not raise any public interest factors in its briefing supporting the motion to dismiss. There is nothing to suggest that administrative difficulties render the Regional Court any more or less equipped to resolve this dispute than this court. The administrative challenge associated with translation of documents and testimony will exists in either forum. Similarly, both Germany and Delaware are forums related to this dispute. It would therefore not be unfair to burden Delaware citizens with jury duty on this case. Finally, I find that both locales have equal interest in litigating this dispute. For these reasons, these public considerations are neutral and do not favor one jurisdiction over the other. *See Cliffs-Neddrill,* 734 F.Supp. at 150 (finding that, because public interest factors are in rough balance, the defendant failed to meet its burden of persuasion).

---

[2] I have not independently researched this issue.

There is, however, some disagreement over which law should apply to this action. PATS asserts that the subcontract requires that Delaware law govern the dispute, whereas Vedder Munich maintains that the subcontract will be governed by CISG.[3]   Assuming *arguendo* that CISG applies, Vedder Munich puts forth no argument that the Regional Court is better equipped than this Court to apply the CISG.  If CISG does not apply, Delaware law will apply, as neither party asserts that German law will govern this dispute.  The Regional Court is likely not well-versed in the laws of the State of Delaware..  As a result, the law governing this dispute does not add any weight to Vedder Munich's motion to dismiss.

Because Vedder Munich has not met its burden in demonstrating that the public and private interest factors clearly favor litigation in Germany, I find that Vedder Munich has not sufficiently shown that litigation in Delaware would be "oppressive and vexatious ... out of all proportion to the plaintiff's convenience." Therefore, Vedder Munich's motion to dismiss for forum non conveniens is denied.

## VII.   CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss (D.I. 3)  is denied in part and stayed in part.   A separate order will issue.

---

[3] The United Nations Convention on Contracts for the International Sale of Goods.